Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding. Case number 21-0510, Brad M. Gold v. Carpenter, Lipps & Leland, LLP. Good afternoon. Apologize for being late. Last case took longer. We're liberal in allowing time to argue. You each will get 20 minutes. Mr. Clinton, you'll get to tell us how much time you want to rebuttal. I'm Justice Michael Hyman. With me is Justice Carl Anthony Walker and Justice Mary Ellen Coughlin. Will you please introduce yourselves? Sure. My name is, may it please the court, Ed Clinton Jr. for the Appellant and Plaintiff, Brad M. Gold. Anthony Barone, Your Honors, on behalf of the Appellees. Thank you. And how much time, Mr. Clinton? 15 minutes. No, I know that. Five minutes for rebuttal? Five minutes. We will probably interrupt you, finish your thought, and then if you would answer our questions, we'll treat this as if we were in the courtroom. Of course. Any questions? Mr. Clinton? This is a fairly simple case. I say this in beginning any argument with some trepidation. The question is, there are really two issues, whether we should have been given leave, plaintiff should have been given leave to file an amended complaint, and then the underlying question is, in the underlying case is, whether Mr. Gold was the prevailing party in that piece of litigation, and there's some issues from there. But my reading of the record, and that's where I disagree with the trial court and with the appellants, is that I think Gold was the prevailing party in the underlying case. And the main factor, the most important factor is that they filed three claims against him under the shareholders agreement, and they said, we're terminating you for cause, and you're going to get book value. And the court comes out that the termination for cause doesn't go through, there's no cause, so he receives market value. We know the facts, we've read your briefs, we've read the record, we're very familiar. With regard to the question of attorney fees, the court ruled that the defendants, this is in the original case, did not act arbitrarily, vexatiously, or otherwise in bad faith, and declined to award attorney fees, is that correct? That is correct, that was the ruling of the court, yes. Okay, but the basis for awarding attorney fees, it's not whether the defendants acted arbitrarily, vexatiously, or otherwise in bad faith, is it? No, it's not, it's under the shareholders agreement where the Gold is the prevailing party, so that's the wrong standards. So the judge, whatever else you might argue, the judge used the wrong standard to determine who the presiding party. That's correct, I agree with that. So is there anything else we need to consider? Even, I mean, you did a really good job of laying out the claims, and I'll ask Mr. Beroni whether he agrees with that, but you did a very good job of laying out the claims and connecting them to the settlement, to the agreement, or not, so. The only other issue in the case is the, there's a, there's a Tribune case which is cited, and I think we do need to address that in the main part of my argument, I think it's only fair. I don't agree with the Tribune decision, I'll just put that out there, I think it's a poor decision, because it encourages people to, you know, use their appeal as a, like a get out of jail free card. But I also think the 1st District has kind of gone a different way, if you look at some of the 1st District cases. The 1st District cases seem to say, once that fee petition was withdrawn, that it's of no effect. But the, but the more important one I saw was this, it's Delon, Jupiter versus Draper and Kramer, and I did not cite this in the brief. 865 Northeast 2nd 442, this is an opinion by Justice Wolfson from 2007, and you see there's a, there's a whole dispute in the, and then there's an appeal, and the party seeking the fees never raises the fee issue on the appeal. So once that appeal is done, as there was clearly an appeal here and it was dismissed, without raising the fee question, you know, that's, that I, you know, that, you know, his point is that the appellant's failure to raise the fee, fees in the appeal is dispositive, and I think that's more on point than the Tribune case, which defendants rely on. You know, so once, once they go through that appeal, I think that kind of closes up any of the issues that weren't raised beforehand. I think that they, whatever they, you can argue, you can, I think they waived it by withdrawing it. You can argue a number of issues where this case may be different than the Tribune case. Do you know why it was withdrawn? Why was that petition for fees withdrawn in the trial court initially? Well, I believe it was withdrawn because, Judge, I don't know this because there's no I think, I think, and there was no record of proceedings, but I, it appears that the judge said you should have put this in your, there was both a verdict, then there was a series of post-trial motions, then there were motions to reconsider after that. So we're well into, we're past the post-trial motion, and I think what Judge Shelley was telling Mr. Gold's lawyers in the underlying case was this should have been in your post-trial motion, your motion to reconsider. You should have briefed us before. You let too much time go. You missed the time to bring this. That's what I think she said. And then I don't know why. And you believe that based on that, they withdrew it? Yes, I do. I believe that's what happened. I believe they weren't truthful with the client. They told the client that she didn't want to hear it that day, which I don't think is an accurate statement. I think the, I think that that wasn't right. I think they, I think she said, I don't have jurisdiction over this. But Mr. Gold is a lawyer also, right? He is, in Texas. Okay, so he didn't understand what was going on? That's his argument, yes. Okay. He's not an Illinois lawyer, as far as I know. Okay. And so when they withdrew it, then they attempted to, they told Mr. Gold, allegedly, that the judge didn't want to hear it, and that was the basis for withdrawing. Right. I, that's what they said. I don't believe that's true. I believe that it's reasonable to, my allegation is that they weren't, they didn't tell the client the truth. They said the judge didn't want to hear it. I think the judge told them that they had missed their opportunity. The jurisdiction would, it would be a, you know, because there had already been post-trial motions plus motions for reconsideration filed. We're too deep in the post-trial motion process. So that's my, my view of that. And then I think they. When they refiled it though, the trial judge said, I don't have jurisdiction. Correct. I don't know why they withdrew it. The record is silent. We don't know what happened. I have a question. Why is the record silent? I mean, that's a pretty good question. Right. Well, they didn't, there was no transcript of that hearing. So all we have is an order. There was no transcript taken of that hearing when they appeared in front of the judge on I think it's 2019, 2020. Well, whose responsibility is it to provide an adequate record for us to review? It's my responsibility, but you're not reviewing that case. You're where that's the underlying case. We're talking about the under, I'm talking about the underlying gold versus gold case. There's no transcript of the hearing where the fee petition is withdrawn. I think that has to fall on the lawyers or defendants in this case. You're not suggesting that that should not have been part of this appellate record, are you? No, no, I'm not. No, not at all. But what you are suggesting is this was a motion to dismiss 615 motion. So there wasn't any discovery in this case. Correct. That's right. And I'm suggesting that I provided an amended complaint, but I think clears up, you know, may not be a perfect amended complaint, but I think the argument in the amended complaint is however it comes out, and then you had the gold prevail in the underlying case. That's my view on that. It's our position. And number two, however you look at it, the lawyers waived his claim for fees. They didn't, they either didn't appeal it, didn't file a fee petition. He ends up with nothing after that appeal is dismissed. He has no, there's no way to go back through that door unless we have a time machine, which we don't. He waived, those lawyers waived that claim. So that's, that's really the crux of the, that's the crux of my amended complaint. That however you. Let's be clear, because I don't want, you're referring to this amended complaint that was, that you were never allowed to file. Correct. That's right. Okay. So be careful referring to that as an amended complaint, because we're not reviewing it. This is not about an amended complaint. This is about your, your original complaint that was dismissed. You were never allowed to file an amended complaint. But I asked for leave to amend and it wasn't granted. I understand you asked for leave. I'm clear on what the record says. You're referring to the amended complaint as if somehow the amended complaint has been filed and that that's the issue before. It is in the record, but it was never filed. Yeah. The issue is whether you should have been allowed to file this amended complaint. Right. Okay. That's what I'm, that's what I'm saying. I'm saying I tendered an amended complaint that I think states in the claim. I think the first complaint stated the claim too. I'll just say that my original complaint does. I clearly think I should be given at least one amendment. And I think it states a claim. I think however you look at it, the lawyers didn't bring that claim before the court. And I think he is. And I, and again, this is the area of main issue in the case, whether he's the prevailing party or not. I think he is. I think if you get kicked out of the company and they say that you're essentially a thief of fraud and a scumbag, this is what the family member said about him. And then you come out that you get, you get fair market value, not a book value. I think that's the win. I think that's prevailing in the case. Again, that's my, that's our position. Two ways in the case. I have another question, you know, in reading the shareholder agreement, I think your position is that under the shareholder agreement, it, is it your argument that it doesn't really matter if the claim was withdrawn because according to the shareholder agreement, that it doesn't have to go to judgment. Is that what you're arguing? Which claim is that? One of gold's claims was withdrawn. That's true. One that was withdrawn. The claim that's withdrawn. I didn't understand. I still think I'm just saying that I don't understand the argument that you're making about this shareholder agreement. That's just me. I just don't understand. I'm hoping you can help me with that. Well, I think even if you, even if you count that claim, however you count that, I still think he's the prevailing party. He won under the agreement. He filed and got fair market value for his shares under his count. And he defeated the three counts claims that were filed against him. There are three, four, and five of the counter claim of the. He withdrew the claim, right? He withdrew number two. There are two claims. He withdrew number. There's no question he withdrew number two. That is correct. So did he, how, how does that play into the shareholder's agreement? Does that necessarily mean that he then is, did not prevail on that claim because he. Withdrew it. I think you're arguing to the contrary, and I didn't understand that argument. Well, I think he didn't prevail on that claim. I think that's the correct way of looking at that. I think that's the correct view that he did not prevail on a claim that he withdrew. He certainly could not have asked for fees on that claim. The judge would not have erred in denying fees on a claim that he withdrew. But I think when you look at the totality of the claims under the shareholder's agreement, he felt one in his favor and there are three against him. That he, he should be viewed as the prevailing party because it's a huge difference to go from book value to a decision on a fair market value valuation, which is at a minimum of 200,000. It's a minimum of four to five times what they offered him and could have been more. We don't know what their arbitrator said. It was the judge set up a valuation process under the agreement that the two, the two valuation people were to pick a third one. So we don't, we don't know the final number. Okay. So how many claims are you maintaining that he prevailed on? I maintain that he prevailed on four. And what about the other side? How many claims in your view did they prevail? They prevailed on only the one we withdrew. That's it. That would be my argument. Does it even matter? Let's look at the language in the shareholder agreement. It says that you have to commence an action against the other party to enforce the terms of the shareholder agreement because of a breach of the other party of any of the terms of the agreement, right? And that's the prevailing party shall be entitled. So if you brought a claim against the family, the business, which had nothing to do, remove from your complaint, any shareholder agreement claim. So you have defamation and contract and the business act and all that. Would he be entitled to a penny for attorney fees? It prevailed if you prevail? I don't think so. Well, you said you don't think so. Yes or no? No, it has to be under the agreement. So the language of a shareholder agreement is you have to prevail under the shareholder agreement. Right. And the only party that prevailed under the shareholder agreement was your client, wasn't it? Correct. That's correct. The defendants in the original action did not prevail on any claims that were involving the shareholder. Correct. That is absolutely right. So why? So why would it be relevant to consider those other claims and deciding who prevailed? It isn't. They aren't relevant to the case. The libel claims, all the claims, this unfortunate family dispute, all the extra claims are not relevant to the fees. So do you think you're entitled to fees for everything or just for? No, just the shareholder agreement claims. So you're going to have to, in my opinion, so if the fee bill is a factor of X, there's going to have to be some, it's going to have to be reduced because some of that didn't deal with, there was a couple of defamation claims between the people that are totally irrelevant to the fee shifting. The fee shifting is just the shareholder agreement. That's what it applies to. So that has to be parched out. That's not convenient. So again, going back to what my original question, the judge never even considered the language in 20.9. So there's, there's no basis whatsoever or the denial based upon the settlement, the shareholder. I agree. I have another question that I just have to ask only just to get rid of it. There was some, I believe, typographical errors on page five of your reply, where you referred to a enforcement of a settlement agreement. You mentioned it two times. Oh my goodness. You were right. Those are typos. I apologize. Okay. I did not see the word settlement anywhere else. And I apologize, judge. I don't mean to embarrass you, but it did come up and that's all I have. Okay. I have one question, you know, and I'm sorry, I just, yeah, I can't understand this. So even if you did withdraw your claim under the shareholders agreement, why does that even matter? It really shouldn't because there wasn't many fees expended on that claim. It shouldn't matter. But I mean, doesn't the agreement say it doesn't matter if it goes to judgment, you just have to file it? I mean, am I misreading this? No, I think you're right. I think you're right. I think he, he did prevail under any common sense view of it. He prevailed. He got, he got, he got fair market value, not book value, and he defeated the claims against him. So I'm saying he's the prevailing party. But what about this language though, that says that it doesn't matter if it goes to judgment or not? How does that affect? I think if at all. Well, I mean, if I think that leaves, if the case had settled, I think that would lead you to have still have a fee claim. Like if they said, okay, we're going to, yeah. So that doesn't apply necessarily to withdrawing a claim. It applies to something else. Right. I believe so. Okay. All right. Thank you. That's all I have. There aren't any other questions. Mr. Thank you. The, let me just correct what was said before. He claimed that was withdrawn. That was voluntarily dismissed by the appellate. That was a claim for breach of the shareholder's agreement. Brad gold withdrew that claim, which means that the Adam foam defendants prevailed on that claim. And justice Coughlin, what you were saying makes absolute sense. The shareholder's agreement specifically says that it doesn't matter if the claim proceed to judgment. So the defendants, the Adam foam defendants prevailed on a claim under the shareholder's agreement that didn't go to judgment because Brad gold withdrew it. So he's not Problem with your analysis is it doesn't take account of the code of civil procedure because they withdrew the claim. I mean, under your theory, they could have had a hundred claims and everyone of those claims would be applicable to whether their prevalence prevailing party or not, even though they dismissed 99 of them. Am I right? I'm hypothetical. They make a hundred claims. They withdraw 99. And you would say you prevailed on 99. Is that what you're saying? That's correct, because it's not the code of civil procedure that matters here. It's the words in the contract. As your honor noted earlier, the prevail, the attorney speed language in a contract has to be strictly construed. This was what was in the contract. If it is, well, where does it say that it talks about claims, individual claim? We have an action. Remember, I said my hypothetical, there's one claim left, right? They withdrew 99. There is a claim. They could settle the claim. They couldn't litigate the claim. The 99 are not settled or litigated. And I've never heard that somebody prevails when somebody when the party who makes the claim takes it away that you say you prevail. There was no decision by a court that you prevail. I mean, give me a case that says that a rejected claim, a claim that's dismissed voluntarily is susceptible to discussion as a prevailing claim. There's no case like that. In both the Pendleton, Lobo and Powers cases, I believe that there's not specific language like you're suggesting, Your Honor. I believe that there were claims that were dismissed. There were also claims, you know, one side, one or the other one. All three of those cases, the court held that in an action in which there are multiple claims and one party wins on some and the other party wins on the other, that it may be inappropriate to find that either party is the prevailing party. But another thing I know, Your Honor. Wait, let's just stop on that because I apologize. No, no, I interrupted you. I should apologize. But that's not the issue here. It isn't that the claim was decided. It's that the claim was withdrawn. It was never decided or presented to a court. Therefore, it's as if it never existed. I don't believe so. I don't believe so, Your Honor. Does Sheryl, I apologize again. You have no case law. You just told me there is no case that says that. And even then you agree under the 20.9 that the only thing we could be talking about is a claim under the shareholder agreement. And the claim that was withdrawn was not under the shareholder agreement. So either way, you lose. No, Your Honor, it was under the shareholder agreement. That's what I'm saying. The only claim that Brad Gold brought under the shareholders agreement was count two, which was dismissed. The ruling. That's not my understanding. That's not my understanding. Then let's go through it. Okay, let's see. If you look at page two of the reply brief, let's go through it and see if you agree or not. Number one, these are Gold's claims. Remedies under the Illinois Business Act against Lonnie Gold and Jeffrey Gold. The claims under the Business Act remedies were nothing was awarded to Gold. However, Brad was awarded a judgment in favor of count one. It was a total relief sought or payment for the company's buyback and was shared pursuant to the shareholder agreement. That's not accurate, Your Honor. Count one and the complaint is attached to the appendix. The underlying complaint is accounts to the appendix. Count one was a cause of action under the Business Corporation Act for short shareholder oppression. Brad Gold lost every bit of that. He wanted a finding that there was a misappropriation of funds. The Adams phone defendants won. He wanted a finding that there was shareholder oppression. Your Honor, give me just one second. I'm so sorry, but it's important that we're clear that he lost every part of that. He also wanted a finding that he should get redemption of his shares with an immediate payment for fair value, not fair market value. That's not what he asked for. That would have given him like 500 grand and all the money up front. The judge instead, on her own, neither side asked for fair market value, said the shareholder's agreement says fair market value, and I'm going to give you a 15-year payout. So he didn't win any part of that. I'm talking about count one, okay? That's what I'm talking about. Well, he lost on count one. He was not entitled to any relief under the Business Corporation Act. The Business Corporation Act is outside of the shareholder agreement, so it has no effect whatever on this case, correct? Your Honor, I think you'd read that. I'm not trying to mince words with you. I think you can read the shareholder's agreement one or two ways, but I understand what Your Honor is saying. It should be the claims that are involved in the shareholder's agreement. Tell me why it shouldn't. I mean, it says shareholder agreement. It doesn't say anything else. And you know, I mean, you're familiar with the case law and everything. You know that in bringing the claim that the shareholder agreement has to be read specifically that clause, section 20.9, it's supposed to be read in conjunction with the total agreement. And you don't get attorney fees unless there's an agreement otherwise, correct? Correct. Okay. And so there's no agreement otherwise, except 20.9. And there's nothing that would allow them to get attorney fees any other way. So, and it only talks about... Except under the BCA, but yes, they lost. They lost under the BCA. Brad Gold lost that, right? Yes. Yes, Brad Gold lost. But what I wanted to ask, and that's why I was interrupted. I understand everything you said. Totally. That was the judge's ruling. I agree. But Council says here, and I'll have to support it, because I think you're saying he's an error, says that on count one, the court found that Brad was entitled to a resort or payment for the company's buyback of his shares pursuant to the shareholder agreement. Is that... Are you saying that's not true? And if you're saying it's not true, then tell me what? It's not true. I don't mean that Council's purposely trying to suggest something like something else. Let me explain why it's absolutely not true. The relief sought in count one was all under the Business Corporation Act. The relief sought by Brad Gold in count one was to force the defendants to buy his shares back at fair value. It had nothing to do with a fair market value buyout pursuant to the shareholder's agreement. Fair value is much different than fair market value. Fair market value envisions a minority discount. Fair value does not. Fair value also requires upfront payment. Under the shareholder's agreement, the payout for buying the shares for fair market value was 15 years. All of Brad Gold's claims in count one relative to the repurchase of his shares were denied. The defendants, the Adams Gold defendants, wanted a book value buyout. So they wanted a buyout for like 40 grand. Brad wanted a buyout for like 500,000. The judge, and she just put this as part of her count one ruling, even though this is not what was sought, Judge Shelley, in count one, but she was going to have to get to the issue sooner or later. What she said is, under the shareholder's agreement, it's fair market value. Something neither side sought. Adams Foam didn't seek fair market value. Brad Gold didn't. And she said that's the way it should be. So Brad Gold absolutely lost count one, and he did not get the relief he wanted. And the only claim that Brad Gold brought under the shareholder's agreement, count two, and I understand your honor's point on this, was withdrawn, which means that Adams Foam prevailed because it was withdrawn. Brad certainly couldn't be the prevailing party. That was the only claim he had under the shareholder's agreement. Okay, I understand. At some point that you believe there were no prevailing parties here. So, and it seems to me that, as I read the shareholder's agreement, that if no one prevailed, and there's no determination made by a court as to who prevailed, and there's no settlement to basically let us know who prevailed, then no one prevailed. I think that's accurate. In your brief at some point, you say that no one prevailed. Right. What I was trying to say, and maybe I said it inarticulately, was that there was no, nobody should be considered to be the prevailing party, which is what the shareholder's agreement requires. Because in the past, like, Yes, I'm going with your statement that pursuant to the shareholder's agreement, you believe that in this case, nobody prevailed, right? Correct. That's what you say in your brief. So now, but you're arguing something different. You're arguing that because that claim was dismissed at referring to count two, that somehow your client prevailed. And as I read the shareholder's agreement, that you don't prevail just because a claim is dismissed. When a claim is dismissed, I agree with you that there's no prevailing party on that claim. So let's at least move past that. So we're not running in circles on that argument. We all agree that where a claim is dismissed, nobody prevails on that claim. So now what we need to do is look at the claims upon which the court actually ruled. And we need you to make it clear to us who actually prevailed, as Mr. Clinton did in his reply brief. But you're saying it's not correct. So we want you to make those corrections. There was no claim. So if the only thing that we care... Let's go through it. We were going through it. And I think it'll be real simple. Because if we use his page three as a text, we just talked about two, gave us a response to one. All the rest of the claims by gold, three, four, five, six, seven, eight, gold says they're unrelated to the shareholder agreement. So under one reading of the shareholder agreement, they're irrelevant. Right? Yes. Okay. So let's go to the next page. The affirmation is unrelated. And so it's per se. And I guess the other two goals. Okay. So now we come to the claims by the defendants. All right. So fiduciary duty is unrelated. Nothing to talk about there. Conversion is unrelated. Nothing to talk about there. Now, here's where we need something to talk about. Because it says breach of contract, the shareholder agreement, and specific performance. Gold prevailed. And defendants were awarded zero. What's your response to that? My response is to go back to Peloton and to Powers and to Lobo. And this case is essentially a draw. Nobody got what they wanted. People won claims. They lost claims. I understand your honor is looking at the ones relating to the shareholder's agreement. Again, the only claim that Brad brought was voluntarily dismissed. Justice Walker, I know you're not going to be happy hearing that. But the case is a draw. Nobody should be declared the prevailing party. No, but I understand what you're saying. But do you agree that count three was under the shareholder? Count three of defendants counterclaimed. I have to look at it a second. It was a breach of contract specific performance. There was a breach of contract claim that was unrelated to the shareholder's agreement. It has to do with splitting up. I don't know. This one has to do with the shareholder agreement according to the brief. I understand, but I don't know that that's accurate. And I'm not. I just need to take a look at it. Sure, take a look at it. We want to get it. We want to get it right. One second, your honor. I'm just looking through it. Now, let's see. I got it. So. And at some point, I want to come back to the whole count one thing, because it seems as though that the court was enforcing the shareholder's agreement on count one when they awarded the fair market value. You're talking about count one of goals. Count one of goals. I want to come back to that. But I want to give Mr. Barona a chance to look at what he's looking at. Memorandum. Fine. Anybody. So. Okay. So. Is there a problem? I'll be here. We are. We're just looking at what count three is about. And your honor, I was trying to find that. It does involve the shareholder's agreement. So earlier when I said I wasn't sure, it appears that it has to do with the specific performance and whether he was terminated for cause. And with regard to the count four. Well, before we move on, just so we're clear that so you're saying that on count three, gold did prevail. Right. And it is related to the shareholder's agreement. So let's just pause there for a second. Now, tell us upon which claim that your client prevailed that involved the shareholder's agreement. Count two, the claim that was withdrawn. Well, we just we just we just ran around that circle. Your honor, I understand that. No, no, on that claim, the trial court didn't make a decision on who prevailed on that claim. The shareholder's agreement, though. No, I know the shareholder's agreement says that it also requires that there to be a prevailing party. And where there's no prevailing party, no one prevails. But we can move on. Maybe you and I fundamentally disagree on the understanding of the way the shareholder agreement should be read. So so you're saying there are no other claims. So go on now. We'll let you continue with your argument. I just as I'm in it or just a couple of questions, but I think I'm clear. I think I'm clear, too. I'm clear on three. I just want you to confirm that on four and four and page four of the reply brief. Counts for and it's referred to as count for the declaratory judgment and the rescission that gold also prevailed on those claims. Do you dispute that? Getting back. Mr. Counsel, I think that. The that Mr. Clinton is arguing that his client prevailed on those three claims, the breach of contract, the declaratory judgment and the rescission of shareholder agreement, and that he would be the prevailing party on those three claims.    And I think that's what he's arguing. To fees and those three claims only. And if I'm misspeaking, Mr. Clinton, you can correct us when you have your opportunity. But I think that's what he's arguing. Do you just. Can I just add one thing, Justice? There was Mr. Barone has already distinguished it, but I'm count one gold claim. There was it was under the Business Act, but. Mr. Clinton said that they prevailed under the shareholder agreement to which Mr. Barone said, no, I disagree with. Am I correct, Mr. Barone? Yes, your honor. OK, so I just want to put that into the mix. Just there's a question. Right, but maybe he should answer Justice Cogman's question, though, because he has not answered it. We're just talking and we're not getting an answer. OK. But we need we need Robert's rules here. I already asked my question. The chair will the chair will recognize. OK, thank you. Here we go. Breach of contract shareholder agreement. Page 4 of the reply brief. Judgment to enforce a shareholder agreement and rescission of the shareholder agreement. Gold says gold says he prevailed on all three of those claims. Do you deny that? No, I believe that's correct. OK, I believe that's correct. OK, so then I guess my next question is, isn't he entitled to fees on those three claims? No, because he didn't prevail on count two of. Which was which was withdrawn. Yes, but other than that, you have no argument that he's not entitled to fees. Other than we understand that's your position, but that's your only opposition to his request for fees. Am I right? Well, I also suggested to Justice Hyman earlier that I think that the shareholders agreement can also be read such that if you bring a motion to enforce or because of a breach of shareholders agreement, the prevailing party is entitled to fees that could encompass the other claims. But I think we've gone around that issue, so I understand that's it. And Mr Clinton is saying even if we were to determine that he's the prevailing party on these three claims that he's only entitled to fees in connection with those three claims, nothing else. Correct. OK, just just put a period of this under 20.9. This is any party that commences an action against the other party. The counterclaim is an act you would. Would you agree it is a commencement of an action against the other party? I do. OK. OK, anything else you want to say? So whether or not there's a valid fee claim, if it could be brought under rule 369 B, it doesn't matter anyway. Dismissal of the complaint was appropriate. So the Tribune case is on all fours. Tribune case. There was a fee petition filed before the appeal. It was withdrawn, just like in this case. The appeal proceeded when the appeal was over. Chicago Tribune was found to have been able to refile that fee petition because it was other proceeding. And as another proceeding, the trial court was revested with jurisdiction. So irregardless of how the court rules on whether or not there could be a valid fee claim, there's no legal malpractice claim here because of 369 B. So your point is that your clients. If some court were to find that your client was negligent, it wouldn't matter because there was there were all these intervening causes. That's kind of what you're arguing, right? No, there's lots of well, I argued a little different, Mr. Justice. There are lots of attorney malpractice cases where a claim remains viable, even if an attorney was negligent. And if the claim is viable at that point in time after the negligence, here goes the filed a fee petition after the appeal was dismissed, then there's no attorney malpractice. And what I'm arguing here is that claim remained viable. The fee petition remained viable under Rule 369 B. And who was his attorney at that time? I don't know if he had an attorney at that point in time. Why wasn't your client still his attorney? My client was done when the appeal was dismissed. That was the end of my client's role. And had no had no responsibility to inform the client. There's no facts in the record, Your Honor. And I don't want to make things up. There's no facts in the record about what the client was informed or what the client wasn't informed. And there's no allegations in the complaint or that was dismissed about my client's failure to inform Mr. Gold. So anything along those lines, asking me to speculate, asking Mr. Clinton to speculate, I don't know the answer. It's not in the record. But the issue here in this case, though, is that the trial judge dismissed the original complaint with prejudice and never gave Mr. Clinton an opportunity to file an amended complaint to even address some of the issues that are still outstanding. So that's that's the real issue here is whether or not he should have had an opportunity to file his amended complaint. This is a 2615. I understand that, Your Honor. OK, all right. I'm glad you understand. So we all understand. If I could just address one other point very briefly, Justice Hyman, you indicated you asked Mr. Clinton early on whether the underlying judge, Judge Shelley, used the wrong standard in connection with arbitrary vexatious. I don't know that that's important in light of the rest of the argument, but she did not because the claim for fees was under the BCA. And that was the standard in deciding whether someone's entitled to fees under the Business Corporation. OK, so just to clarify, then, she did not determine fees under this shareholder agreement. Correct. Thank you. I appreciate it. Well, that's contrary to what you said earlier, though. You said earlier that she decided to follow the shareholder's agreement, and that's why she did fair market value and not fair value. She did. That's exactly what she decided to do. I don't think those two things are inconsistent. Mr. Gold didn't have a complaint on file at the time that was asking for fees under the shareholder's agreement because he had dismissed count two, which was the only count that was brought under the shareholder's agreement. Since he had no pleading asking for those fees, there was no reason for Judge Shelley. I mean, I don't know exactly what her thought process is, but there'd be no reason for Judge Shelley to rule on that issue. Anything else? No, Your Honor. Thank you very much. Mr. Clinton? I don't agree with the Tribune case. I'll just say that. I know the counsel has said that. I do. Let me ask you this question. If we follow it, you lose, correct? I don't think so. No, I don't think I would lose. Explain how we not follow. If we don't follow it, how does it distinguish them? They withdrew that claim. The lawyers wanted to withdraw it, and there are cases in the first district that indicate that if you withdraw it, it's gone. I don't agree with that. You don't agree with the case. I understand it. You don't agree with it, but that is a case that has presidential value. So it's been brought up, and it's been argued by your opponent. So you say we shouldn't follow it because it's wrongly decided, but is there anything else besides the fact that it's wrongly decided? The defendants, as far as I know, were still counsel when the case got remanded for a short period of time. And so they could have raised it then. I think your counsel was talking about that. Is that in your complaint that they were still counsel? It's a good question. Excellent question. Not in the amended one. But if you look at the proposed amended complaint, I'm saying however you look at it, they never brought the fee claim to the court's attention. And they didn't counsel the client when he dropped the appeal, but that was the end of that fee claim. That's in the amended complaint. Yeah, that's the amended complaint. Let me find the original one. It was not allowed to be filed. That's correct. It was not allowed. And in that, I just want to make sure I understand the point. So the point is that you're saying that in the amended complaint that was not allowed to be filed, you did indicate that the defendants were still your client's counsel for a month after it came back. I didn't put it. It's not formally alleged, but that's correct. Yes. What do you mean by not formally alleged? Well, I just say here that by not raising it on the appeal, I didn't get that far. So here's all I said was the dismissal of the appeal was a breach of the standard of care because once you dismiss the appeal, you fully and irrevocably waive anything you could have raised in that appeal. We can't go back and do that again. And then they fail to explain to him if he didn't appeal, he would have no other recourse and his claim would be barred. But the record indicates that they were still counsel. The record itself indicates that they were counsel of record when the appeal was done. So that's my point. I don't know where it indicates that, but I've got to find it. C251 and C256 are the two parts of the record that have them as counsel. All right. Well, let me ask a different question that we discussed. Sure. And that is the disagreement on what happened with count one of the original case. There was under the business corporation act that you said that Brad was entitled to relief sought repayment for the company's buyback pursuant to the shareholder agreement. Is that correct about that? He's correct. I was so right about that. I got that wrong. It's where the judge put her ruling on the fair market value. So she taxed it on to the end of account one. That's how she tacked it on. But so just to review where both of you are after your briefs and today is that with regard to the question of prevailing, if you accept that we be limited to the shareholder agreement, all the prevailing accounts had to do with the counterclaim. Right. That's right. And yes, that's all I have. You agree that you only prevailed on counts three, four, and five of the counterclaim. Correct? Correct. Yes. Okay. So, but, but again, the issue here is that the trial court's position was in, and when I say the trial court, I'm speaking of the, the, the, the case that we're here, that that's before us. Now, the trial court's position was that there's no way you could prove that you would be entitled to anything because you, is that correct? I mean, that's right. That that was the trial court decided not to allow you to file your amended complaint. Correct. I disagree with that. I respectfully disagree. Wait, you disagree with the trial court? The trial court. Yes. Not that was it. We knew what you meant, but go back to the time and clarify it. That's all I have. Are there any other questions? Thank you very much for listening. Appreciate that both sides, your briefs and your arguments, your professionalism. It's always nice when lawyers are professional like the two of you. Have a good afternoon. Thank you very much. Thank you.